Nucleic Acid Water May I please the Court, Counsel. My name is Katie DeSoto and I represent Defendant Appellant Jonah Michael Warr in this case. Mr. Warr was sentenced by the District Court for violating 18 U.S.C. 1855 for willfully setting fire to wild lands. For those nine violations, he was sentenced to 120 months, 60 on the first eight counts to run concurrent, I'm sorry, yes, and another 60 to run consecutive on count nine. We have two grounds for appealing this sentence. The first is the calculation of the guidelines, which we feel was inappropriately calculated to include actual loss, thereby raising it up much above what we calculated it to be. I didn't understand your argument on that. It looked to me as though the old guideline said you just look at the value of the property destroyed and the new one makes it clear that a reasonably foreseeable pecuniary harm is counted. Fire suppression is a reasonably foreseeable pecuniary harm. What am I missing? Well, I think, Your Honor, that it is a factual determination and so it's a high burden for us to reach. It's our position that – Is the right standard for the judge to use, does it include reasonably foreseeable pecuniary harm? It does, Your Honor. And so what our disagreement is whether the actual costs in this case were reasonably foreseeable to Mr. Warr himself. One of the things about this guideline is that it kind of meshes what we would call traditional tort concepts with criminal standards. And so it requires the court to go through a factual determination of what would be reasonably foreseeable to the individual defendant. But if the record showed that when your client set the first fire, which I understand was the most damaging of all the ones – That's true. that he was trying to set a really big fire, it's not a stretch to foresee that it would cost a lot of money and potentially endanger life and property if he succeeded in that goal. I think that's true, Your Honor. I think that that's why this is so difficult, because it does require an individual look. And when you look at how Jonah went about setting the fires, admittedly by the Forest Service's own characterization, it was childlike, very simple, literally pulling over to the side of the road and lighting a lighter to grass thereby. In high wind conditions. I think it ended up being high wind conditions. I don't know if it was high wind the particular time that he set it. What's so – what does that make it unforeseeable? I mean, Zippos are great. I have Zippos. They set fires. Ideally, just to your cigar or whatever, or your pipe. They do, Your Honor. Why else would he start a forest fire? Matches blow out in the wind. Well, I think there are a number of steps that he could have taken to ensure, had the weather been different, to ensure that it still would have ended up being such a big fire. And that's why even though the standard in Newman is different, because the guidelines have changed, I think the discussion in Newman is instructive, because what the court talked about in Newman was – I'm trying to get at what's unforeseeable. So tie your discussion in Newman to that. I can't see why it's unforeseeable that they're going to spend the money they claim fighting the fire. Well, part of what Newman looked at, Your Honor, was the defendant in Newman, and he actually was, I believe, a Forest Service employee, but that the court couldn't really consider his knowledge of particular fire behaviors in terms of looking at foreseeability because it simply would result in such a disparity in the sense that if you live in a place like Montana where there are wildfires in the summer, you know, you could say that everybody in Montana has some knowledge that if you set fire, there's a chance it will blow up, compared to a place, let's say you live somewhere else geographically where there's not the same weather system or whatever. I mean, I'm just looking at some of the science involved. And so what you really end up with is a huge disparity based on certain characteristics or traits that an individual defendant may have or just by virtue of where you live. And I think that without finding more, so... The response to the fire by fire officials is going to be pretty uniform throughout the country, whether the wind or geographical conditions are favorable to setting fires or not, isn't it? I mean, the only difference would be if the defendant doesn't succeed in setting a really big fire and it only takes a small fire engine to put it out, then the costs are not going to be great. Well, and I think what Newman looked at, too, though, Your Honor, was that it took that into account in the sense that it said, you know, the judge on particular or in a particular situation, while not calculating it as actual loss, could use it as an upward departure. And that ties into the reasonableness argument that we've made later. So in other words, if the judge felt that the actual loss component of the guideline calculation did not result in an appropriate sentence for Mr. Warr, that would be addressed in 3553 factors. And so I think there is still a way to get at it without calculating the actual loss. Your position is that Mr. Warr would not have been reasonably foreseeable when he set the Cache Creek fire? If there were hikers on a trailhead further up the canyon that were trapped and died in the ensuing fire because they couldn't get out, that would not be reasonably foreseeable to the arsonist? I think potentially it could be, Your Honor. I think it's an individual analysis. Well, you know, the application, though, seems to indicate that it's not so much individual, but it's an objective test that doesn't require that much fact-finding as you seem to think it does in your individual case. It says, you know, either the defendant knew or under the circumstances reasonably should have known. So he doesn't really have to know. So, for instance, in this case, I don't think it's really important that, you know, he might have had some firefighter training. I just think any reasonable person would seem to be able to foresee that a big fire is going to require big suppression efforts. That is what the application note says, Your Honor. And it's our position that in this circumstance that it was not reasonably foreseeable to Mr. Warr. And that is our position. So your position is he could say without anybody laughing, oh, I have no idea what     It's a big deal. And if it gets so big, they'd spend all that money to put it out. I think that when you look at the circumstances of Jonah Warr, including his mental illness, I think that he could say that and probably would say that. But again, we're back to a factual determination. And you have to, I guess, convince us that it was a clear error for the district court to find that it was reasonably foreseeable. That is true, Your Honor. Okay. Let me ask you a question with regard to whether or not we should vacate submission on this case. I understand last Friday that the Supreme Court, I learned on Friday that the Supreme Court had granted cert in a related case that questions, I'm going now to your Rule 32 issue on the psychiatric, or the Bureau of Prisons report, that the Supreme Court has granted cert on a related case that is going to address the issue of whether or not something that's not disclosed prior to sentencing, whether there's an obligation to do so. I think we ought to wait for the Supreme Court to decide that case before we rule on this one. I was not aware of that case, Your Honor, so I'm not certain of what facts the court will be looking at or what type of case, I guess, that's going up. I mean, we obviously relied on NAPI for our argument regarding whether it was reasonable for the court to rely on that BOP study without disclosing it to us and allowing our expert to disclose it. I would certainly agree that if the case is such that it will determine or have a profound impact on the outcome of this case, I would certainly be agreeable to vacating this proceeding until that case has come down. Well, you think it makes a – it would make a difference to that decision whether or not we're governed here by the plain error rule? Nobody objected at Crowell, right, to Judge Malloy's referring to this report? Correct. At the sentencing hearing, the judge just mentioned it. I did – I did mention on the record that I had never seen it or been provided it and asked questions of our expert about it, who also noted that he had never seen it or – There was no objection to his – you know, the judge's reference to it and there was no request for, you know, further time to, you know, take any action. Certainly. Isn't it a plain error case? I think, Your Honor, that it probably is. I think even under the plain error standard, though, I think that the defendant prevails for this simple reason. We believe it's an error under Rule 32 to not provide it to us. We believe that they – that the error was plain, it was obvious. And we also believe that he was substantially prejudiced for it. What's the prejudice? The prejudice is, Your Honor, that we had an expert, a psychologist who examined Mr. Ward. He's the only person in the entire case who provided any kind of medical or psychological testimony. And he was asked specific questions about recidivism and the impact of mental health treatment, both in terms of having a diagnosable mental illness and then later being treated for it. He was asked specific questions on recidivism, on the impact of that on recidivism, and it was his opinion that it could make a large impact. He asked Judge Malloy, because he obviously said that he had also not seen the study, he asked Judge Malloy specifically if the BOP study incorporated any kind of discussion or any kind of controls regarding mental health treatment and lack thereof. And Judge Malloy said no, it really wasn't. Counsel, I don't understand the focus on the BOP study at all. First of all, if the question is whether the judge can take judicial notice of it, the answer is the rules of evidence don't apply at sentencing. He doesn't have to go through the judicial notice procedures. Second, as far as I know, the BOP studies of that type are all in the public domain. It's just like Judge mentioned, it's a book he read in the library. It's public study. And third, and really most important to me, is I don't know anyone in the criminal justice system who has not been saying for years, well, they tend to age out of it. You get a whole lot more crime by people in their 20s than people in their 40s. Whatever it is, it goes away. And that seems to be all the BOP study says. Your Honor, I'm out of time. May I answer your question? Please do. I guess I still haven't seen that study, and I know it may be in the public domain. Could you have? I mean, did you get on the Internet and go to the bureau prison site and look for it? I tried to, and I could not find a study that directly addressed that. I don't know if it's buried somewhere in a different study. I simply could not find it. I think it's important for this reason. I think that when a psychologist tells you that mental health treatment has a direct impact on the likelihood of recidivism. Oh, sure. The guy was getting Zyprexa. It's an antipsychotic. Absolutely. If he's psychotic and the Zyprexa works, he'll be less crazy. Well, but it's more than that. If you read what Dr. Scolati said, though, he also said that it's not just medication. The medication works itself out, you know, in terms of getting the medication, tinkering with it, and so forth, until you get to the appropriate level. That works itself out fairly quickly. But then afterwards you have, you know, several years of therapy to work on the impulse control disorders that he was diagnosed with. I mean, the primary diagnosis that Scolati found was pyromania impulse control. He was borderline psychotic. And if you read the transcript, Scolati even said that he points out lower than what Scolati would consider psychotic. It just is one of the axis of diagnoses that he made. And so I think that that he did agree with him general. He did agree with Judge Molloy generally that it's true that as the age of the offender rises, their recidivism rate decline. He did agree with that in general, Your Honor. I think the problem is that we were asked to respond to something not provided to us that may have had an impact. And I would direct you to the sentencing. But if you agree with that general premise, then the only thing you can fall back on is the fact that, well, we don't know whether or not the BOP study dealt with people whose images were treated or not. Well, I think the problem, though, Your Honor, is that the judge specifically said he was relying on the BOP study because he felt that Mr. Warr was such a high danger to society and was so likely to recidivate. And so he specifically – Because he was only 19 years old and he's already set, what, 20 fires that we know about. Yes. In about a – You weren't surprised, but that seems to me, I guess, to be the genesis of the Court's concern. I've got a very young offender here who is a serious pyromaniac who has engaged in very dangerous behavior. And I know generally that when inmates are – or defendants are young, the likelihood that they're going to be a recidivist is higher than if they're committing these crimes at an older age. I think that's probably true. Well, I know that's true, Your Honor, but I think that was also couched in Dr. Scalati's testimony regarding mental health treatment and the impact of mental health treatment. Dr. Scalati, as I read page 35, I guess it is, of the doctor's testimony, generally agreed that the younger the – reading from lines 2 through 6, the Court says, it sounds like recidivism rates declined relatively consistently as age increases. Generally, the younger the offender, the more likely the recidivist repeats. That's what you said, and the doctor said yes. So I guess under the plain-error standard, what's the prejudice here? How were you surprised when your own expert agreed with the premise of the Court's question? Because, Your Honor, I think it's one thing to say that in general, if you're younger, you recidivate. I mean, there can be a lot of things that go into that. It can be institutionalizing young people who then become further hardened criminals when they're in the jail system. And whether or not they get treatment for it. Certainly. And the doctor, I think, made that pretty clear to the Court, didn't he? Well, I think he did. I think he said the treatment was important. I think he said that he couldn't rely on the study because he didn't know if the study incorporated any kind of analysis on mental health treatment. And I know that the study was important to Judge Malloy because on page 60, he said that I think one of the very, very significant factors in the sentence that I'm going to impose is the need to protect the public from further crimes by Jonah Micawar. And when you couple that – Because that comes from the fact that he's sentencing a 19-year-old defendant who has set 20 fires, one of which cost $7 million to suppress. Well, I – Why isn't that, without regard to what the Bureau of Prisons has to say about it, why isn't that a reasonable fear on the part of the sentencing judge in looking at Mr. Warren? I think because, Your Honor, the judge also said that he balanced all the concerns that we had about a young defendant and all the other concerns. And what he said was, specifically, that is changed or impacted by the BOP recidivism study. Well, I didn't read it that way. To me, it read like he was saying, I hate to put a 19-year-old in prison for this long, but this guy is really dangerous. He could have killed people and there were people stranded in the Gash Creek fire. Your Honor, on page 55, at line 24, he said the flip side of that is Jonah Warr is relatively young, and as both Ms. DeSoto and Mr. Roscoe have pointed out, that my thinking of locking him up for the next 15 years may be an exceedingly harsh consequence, given his age. But that observation is obviously mitigated by the statistical proof that people with his criminal history category who commit the offenses that he was involved in have basically a 2 out of 3 chance of recidivating, which means that when he gets out of prison, the probability is that he is going to commit another crime. I think, in fact, that Judge Malloy relied in a large part on that study, and it was more than just one of the factors, but, in fact, was the factor in determining his sentence and above the guidelines. Thank you.  Thank you, counsel. DeSoto, if you want to make a note of the case I was referring to, the Supreme Court can insert on it Irizarry, I-r-i-z-a-r-r-y versus the United States number 06-7517. That's the Supreme Court. Thank you, Your Honor. Thank you. Counsel. Good afternoon, Your Honors. Leif Johnson for the United States, and may it please the Court. To begin, I would just like to clarify, for the record, we screwed up the standard of review, I think, in both arguments here. The foreseeability test is very clearly fact-bound. It should be governed by the clear error test. And as the Court has noted, the second argument wasn't raised at the district court level and should be reviewed for plain error. Well, but what about the fact that, you know, you seem to have waived that argument. You never raised it either. Is there such a thing as a waiver of a waiver? I'm not a person of such a thing, Your Honor. I think that clearly, at least with regard to the second argument on the Rule 32 issue, it really didn't come up until the reply brief that the Rule 32 issue was raised, and the Nappy case makes it very clear that Mrs. Soto cited that the plain error test does apply. So I think it should apply here. Your Honor, Judge Kleinfeld, I think you asked earlier, can you find that study on the website. I did find such a study. I don't know if it's the same study, because the judge relied on very general propositions, but I typed in a query and I found a study that does have a table showing that age, in fact, does reduce the likelihood of recidivism over time, and actually the percentages are fairly close to the ones that Chief Judge Molloy relied on at sentencing. I think the major issue here is the BOP study on the net. Yes. If you go to the Bureau of Prisons website and they have a search function, you can type in age and recidivism, and you will come up with a study by Miles Harer, H-A-R-E-R, and it contains a table at page 12, which indicates that recidivism increases from nearly 60 percent for youthful offenders under age 25 to only 15 percent to offenders over the age of 56. I think this is the type of background knowledge that courts do and should take into account, obviously, at sentencing. I don't know that there really would have been any value in prior notice in this case. Obviously, the Court did give Dr. Scalati an opportunity to address it, and they did. Recently in the Gall decision that the Supreme Court, you know, Justice Stevens noted in that case that the district court there had relied on a study having to do with youthful offenders as well. We clearly want the district courts to utilize their full information and reach meaningful determinations. And I think when we step back and look at the entirety of the record here, the Court agonized over this decision. It's well constructed factually in almost every respect. So there really is no prejudice here to the defendant or to the appellant not having had some earlier notice of that recidivism study. As to the issue of foreseeability, Your Honor, obviously, this is an issue of, you know, a fact-bound issue, as I've said. And I would like to just note for the record that there were statements made by the appellant at the change of plea that are in the record here that indicate that one of the reasons he wanted to set these fires was he wanted to get a job as a firefighter. I mean, that's clearly factual evidence that he knew there would be a suppression response, and obviously, he wanted to be part of that suppression response. In terms of foreseeability, I don't think it's even a close question. If the Court doesn't have any questions, I will sit down. Thank you, counsel. Thank you. United States v. War is submitted.
judges: Kleinfeld, Tashima, Tallman